# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CONNIE SUE CANNON,

    *Plaintiff*,

v.                              CASE NO. 10-CV-15171

COMMISSIONER OF            DISTRICT JUDGE STEPHEN J. MURPHY, III
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 15.)

Plaintiff was 62 years of age at the time of the most recent administrative hearing. (Doc. 5, Transcript at 48.) Plaintiff's employment history includes work as a clerk, office clerk, produce clerk, and president and owner of a security business. (Tr. at 126.) Plaintiff filed the instant claim on September 22, 2006, alleging that she became unable to work on October 31, 2005. (Tr. at 88.) The claim was denied at the initial administrative stages. (Tr. at 64.) In denying Plaintiff's claim, the Commissioner considered hypertensive cardiovascular disease and monocular vision as possible bases for disability. (*Id.*) On March 30, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") L. Zane Gill, who considered the application for benefits *de novo*. (Tr. at 8-17, 44-63.) In a decision dated June 19, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 17.) Plaintiff requested a review of this decision on June 26, 2009. (Tr. at 6-7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 26, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On December 29, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S.

137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

>Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and that Plaintiff had not engaged in substantial gainful activity since October 31, 2005, the alleged onset date. (Tr. at 13.) At step two, the ALJ found that Plaintiff's depression, obesity, seizure

disorder, carpal tunnel syndrome and monocular vision were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15.) At step four, the ALJ found that Plaintiff could perform her past relevant work as gas station clerk, office worker, administrative worker, and retail produce clerk. (Tr. at 17.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of medium work. (Tr. at 16-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 17.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff "lost [her right] eye 29 years ago due to a gun going off in [her] hand." (Tr. at 125, 154.) On May 31, 2005, Ronald Hunt, M.D., noted that he was treating Plaintiff for seizure disorder, sinusitis, depression and estrogen deficiency; her prescription drug treatment was continued. (Tr. at 146.)

On January 13, 2007, Plaintiff was examined by a Disability Determination Service ("DDS") physician, Bret Bielawski, D.O., to whom Plaintiff reported that she took medication for hypertension and had "not had any complications such as cerebrovascular accident, congestive heart failure or myocardial infarction." (Tr. at 154.) In addition, Plaintiff stated that "her last seizure was well over a decade ago." (*Id.*) Plaintiff also reported depth perception difficulties and intermittent short term memory loss of variable degree. (*Id.*) Dr. Bielawski noted upon examination:

> MUSCULOSKELETAL: There is no evidence of joint laxity, crepitance, or effusion. Grip strength remains intact. Dexterity is unimpaired. The patient could button clothing and open a door. The patient had no difficulty getting on and off the examination table, no difficulty heel and toe walking and no difficulty squatting. Range of motion of the joints is full.

> NEURO: Cranial nerves are intact. Motor strength and tone are normal. Sensory is intact to light touch and pinprick. Minim mental status exam is 28 out of 30 with her only deficits in registration and recall remembering only 2 out of 3 objects. There is slight past pointing present in both hands with finger to finger. Reflexes are intact and symmetrical. Romberg testing is negative. The patient walks with a normal gait without the use of an assist device.

(Tr. at 155.) Plaintiff's blood pressure was found to be "well controlled on a small dose of Lisinopril." (Tr. at 156.) Due to "some slight past pointing," the examiner opined that "typing, reaching for controls or buttons or working in an environment that would be dangerous to herself if she does miss due to her perception would not be in her best interest." (*Id.*) As to confusion and memory loss, the examiner concluded that it was due to "seasonal affective disorder and not dementia" since "[d]ementia would only have gotten worse over the last 5 years" whereas no such variation had been seen. (*Id.*)

A Physical Residual Functional Capacity ("RFC") Assessment completed on January 24, 2007, concluded that there were no exertional limitations established, that Plaintiff should never be required to balance and that she was frequently limited in all other postural areas, that there were no manipulative limitations established, that she was limited in depth perception but otherwise unlimited in the visual areas, that there were no communicative limitations established, and that Plaintiff should avoid hazards but was otherwise unlimited in the environmental areas. (Tr. at 159-62.) The assessment found Plaintiff to be "only partially credible" due to inconsistencies. (Tr. at 163.) There was no treating or examining source statement to be compared with the assessment. (Tr. at 164.)

On February 15, 2007, Dr. Hunt noted that Plaintiff "does not feel that her depression symptoms are under very good control at present . . . and wants to know if she could perhaps increase" her medication, but Dr. Hunt did not change her prescription. (Tr. at 168, 173.) Dr. Hunt also noted that Plaintiff had "no suicidal ideation," she was "[g]etting good sleep with the Desyrel

50 mg two at bedtime," and although she reported an increase in elbow pain, she "has noted no decrease in muscle strength in her arm." (*Id.*) Dr. Hunt recommended an EMG of her left arm for "possible ulnar nerve irritation or entrapment." (*Id.*)

On March 5, 2007, an EMG of Plaintiff's upper left arm was performed and it revealed "[m]ild carpal tunnel syndrome involving the sensory nerve fibers only." (Tr. at 169.) "Conservative management" was recommended. (*Id.*)

On February 20, 2008, Dr. Hunt noted that Plaintiff reported she "seems to be 'crabbier' than before" but had not noticed "any other systemic symptoms." (Tr. at 172.) Dr. Hunt reported that Plaintiff's physical examination was normal, including "normal muscle strength" and "normal balance and gait." (*Id.*)

Plaintiff indicated in her Daily Function Report that she has no problem with personal care, she prepares her own simple meals such as sandwiches and frozen dinners, that she has a housekeeper and lawn person so she does not do those activities, that she goes outside on a daily basis, drives a car, shops in stores, spends time with others in person and on the phone on a daily basis and is able to read, but lacks interest in doing so most of the time. (Tr. at 109-12.)

Plaintiff testified at the administrative hearing that, as to her seizure disorder, she no longer suffers from the seizures so long as she takes her medication. (Tr. at 55.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who:

> [w]ould be able to lift and carry up to 20 pounds frequently and 40 pounds occasionally; able to sit six of eight hours; stand and walk each four of eight hours in a normal workday; pushing and pulling is restricted only by the lifting and carrying limitations; no need for a sit/stand option other than what's required during normal breaks. Postural limitations would be no use of ladders, ropes or scaffolds; no work that would require anything incompatible with monocular vision . . . . And then handling and fingering we've already restricted to frequent on the left dominant side. Under 21.04 for the depression, the B criteria, there would be mild limitations

9

> on social interaction and concentration, persistence and pace; no episodes of decompensation; no impact on activities of daily living; and in terms of the list of 20 vocationally relevant psychiatric review technique form items, in general, this person would be able to perform at least a full range of unskilled work, not necessarily restricted to unskilled work because of the psychiatric condition, and no areas under the list of 20 that would have moderate or marked impairment severity.

(Tr. at 59-60.) The ALJ clarified that the hypothetical also included semi-skilled work. (Tr. at 61.) When asked whether such a person could perform any of Plaintiff's past relevant work, the VE responded that such a person could perform the jobs of produce clerk and general office clerk. (Tr. at 61.)

    **F.**    **Analysis and Conclusions**

    **1.**    **Legal Standards**

The ALJ concluded that Plaintiff was capable of returning to her prior work. The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your apst relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) ("The

regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

As noted earlier, the ALJ determined in the alternative that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of medium work. (Tr. at 16-17.) "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 11.) As stated earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that "[t]he Commissioner erred as a matter of law in failing to properly evaluate the medical records and opinions of evidence, and thereby, formed an inaccurate hypothetical that did not accurately portray Ms. Cannon's impairments." (Doc. 11 at

6.) Plaintiff specifically contends that the ALJ failed to include the limitations suggested by the DDS examining physician, i.e., that due to "some slight past pointing," "typing, reaching for controls or buttons or working in an environment that would be dangerous to herself if she does miss due to her perception would not be in her best interest." (Tr. at 156; Doc. 11 at 7-8.) Plaintiff notes that both the office work and general office clerk positions would require typing, and thus argues that the flawed hypothetical rendered the VE's testimony inappropriate. (Doc. 11 at 8-9.)

Plaintiff further contends that even if the VE also stated that the hypothetical person could perform the produce clerk position, which would not require typing, that job is incompatible with the RFC finding that Plaintiff should be limited to standing and walking for 4 hours in an 8-hour day because the produce clerk job would require Plaintiff to be "on her feet for 8 hours." (Doc. 11 at 9.) Finally, Plaintiff asks for remand to seek a psychological consultative examination to further evaluate her mental impairments. (Doc. 11 at 9-10.)

As indicated above, the ALJ was not required to rely on the VE in concluding that Plaintiff could perform her past relevant work. *Wright-Hines,* 597 F.3d at 395; 20 C.F.R. § 404.1560(b)(2). However, the ALJ did elicit testimony from the VE and I suggest that his finding is supported by substantial evidence.

Plaintiff complains that the ALJ failed to incorporate a limitation against typing, as noted by the DDS examining physician, Dr. Bielawski, in the hypothetical posed to the VE. Dr. Bielawski admonished that Plaintiff should avoid "typing, reaching for controls or buttons or working in an environment that would be dangerous to herself if she does miss due to her perception[.]" (Tr. at 156; Doc. 11 at 7-8). The gravamen of this warning is to avoid tasks that could be dangerous due to her "perception," which is affected by her monocular vision. The ALJ

12

expressly stated that the hypothetical person could not perform "work that would require anything incompatible with monocular vision." (Tr. at 59-60.) I therefore suggest that even though the ALJ did not mention the word "typing," the hypothetical's limitation to work that would not be incompatible with monocular vision is sufficient to account for Plaintiff's limitations.

I further note that although Plaintiff contends that the general office clerk position would require typing, and thus, that the hypothetical was inaccurate, Plaintiff did not elicit testimony from the ALJ confirming this assumption and she cites no authority for the proposition. I therefore suggest that even if the hypothetical did not adequately cover a limitation to avoid typing, Plaintiff has not adequately supported her contention that her past relevant work as a general office clerk requires that skill. I further note that other cases considering similar occupations indicate that the general office clerk position, at least at the unskilled level, does not require typing or computer skills. *See Bryant v. Astrue*, No. 09-cv-10318, 2010 WL 681285, at *5 (E.D. Mich. Feb. 23, 2010) ("The VE clarified that an unskilled general office clerk is generally not required to use a computer or type-writer.").

Plaintiff also contends that the ALJ erred in finding that she could perform her past relevant work as a produce clerk because her past job required her to be "on her feet for 8 hours" while the RFC assessment found that Plaintiff should be limited to standing and walking for 4 hours in an 8-hour day. (Doc. 11 at 9.) This argument misses the mark since the regulations require the ALJ to look to the type of work performed in the past rather than the actual specifics of a past job. *See Boucher, supra.*

I further suggest that Plaintiff is not entitled to a remand to present evidence of her mental condition that she could have gathered in preparation for the administrative hearing. Plaintiff was represented by counsel and has not alleged any special circumstances that would remove the

"burden of providing a complete record." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). *See also Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x 456, 459 (6th Cir. 2008) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Nor has Plaintiff shown good cause for failing to present the evidence earlier as required to justify a sentence six remand. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991); *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that she has no problem with personal care, prepares her own simple meals such as sandwiches and frozen dinners, has a housekeeper and lawn person so that she does not have to do those activities, goes outside on a daily basis, drives a car, shops in stores, spends time with others both in person and on the phone on a daily basis and is able to read, but lacks interest in doing so most of the time. (Tr. at 109-12.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ Charles E Binder
                                              CHARLES E. BINDER
Dated: January 9, 2012                         United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: January 9, 2012                         By     s/Patricia T. Morris
                                                        Law Clerk to Magistrate Judge Binder